DECISION
This matter was heard by the court sitting without a jury on November 5, 1998. U.S.A. Coil and Air, Inc. ("USA") filed this breach of contract action seeking judgment against Hodess Building Co. ("Hodess") in the amount of $33,156.00 plus interest and costs. Hodess filed a counterclaim, asking this court for $83,734.95 in breach of contract damages. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 Facts/Travel
This case involves a contract between Hodess and USA under which USA agreed to supply heating and cooling coils for an HVAC system. The system was part of a "clean-room" project for Lockheed/Sanders.
Hodess commissioned Am-Tech Engineers ("Am-Tech") to create performance specifications for the coils needed by Hodess, and USA responded with a price quote. In November of 1995, the parties signed a contract purchase order whereby USA would provide the coils to Hodess for $33,156.00. The coils were single feed, per Am-Tech's specifications. USA exercised its discretion in choosing a 5/8" diameter coil.
The coils failed to perform as specified. In early 1996, USA sent Hodess replacement coils. This time, the coils were dual-feed
and 5/8". These coils obtained similar, unsatisfactory results. The communications which followed are well-documented in letters. On February 22, Hodess informed USA that the company would again be replacing the coils. This time, however, Hodess would look for a different vendor to supply the coils. Hodess eventually chose The Trane Company ("Trane") to supply the replacements.
In response to this news, USA requested information regarding the new vendor, the new coils and an accounting thereof, and return of the original coils, as well as return of the replacement USA coils once they were replaced. USA also asked to be present at the replacement installation. Hodess responded favorably to USA's request with the exception of returning the original and replacement coils. Hodess informed USA that they would return the coils if USA would pay for the shipping.
On March 20, USA requested more information, and Hodess in turn provided the information. Not long thereafter, a USA expert conducted a site visit. The expert confirmed that there were condensate problems within the system but concluded that the coils were probably not the cause. On April 30, USA again requested return of the original coil and also sought control and valve data. On May 3, Hodess provided the requested information to USA and repeated its offer to return the coils at USA's expense. On May 20, Am-Tech addressed the topics brought up in USA's letter of April 30. Am-Tech explained that they believed the Trane replacement coils functioned properly because they were 1" in diameter, not 5/8" like USA's coils. On May 28, USA complained to Hodess that its requests for information and return of the coils were rebuffed by Hodess for over two months. On May 29, Hodess informed USA that the company would not pay to ship the coils and offered USA the opportunity to send someone to pick them up. At this point, communication between the parties apparently broke down.
Throughout this time, Hodess never paid USA the contract price of $33,156.00. USA brought this breach of contract suit to recover the sum, and Hodess counterclaimed, also alleging breach of contract, for $83,374.95 in replacement costs.
 Standard of Review
In a non-jury trial, "the trial justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citingWalton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id. See also Rodrigues v. Santos,466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact). With respect to damages, the standard of review of a trial justice's findings is quite deferential. Riley v. Germain, 98-34-A., Slip Op. at 6 (R.I., filed January 14, 1999).
 Plaintiff's Claim
The plaintiff argues that, under Pennsylvania law, it is entitled to its benefit of the bargain under the contract purchase order. USA maintains that it delivered six steam and six cooling coils as promised in the contract; thus Hodess is compelled to deliver the purchase price. Furthermore, USA argues, Hodess did not supply USA an opportunity to cure any alleged breach by non-performing coils. Hodess, relying on Rhode Island law, counters that the coils never met the performance criteria specified by Am-Tech and referenced in the contract itself. In other words, USA is not entitled to receive compensation because it never delivered the coils it agreed to deliver in the purchase order. Hodess further argues that this is not a case where substantial performance would justify payment of the purchase price.
Under the Uniform Commercial Code, the so-called "perfect tender rule" provides that a buyer in this type of sales contract may reject a tender of goods if the goods fail in any respect to conform to the contract. U.C.C. § 2-601. Moreover, a buyer may revoke its acceptance of the goods when revocation is within a reasonable time after discovery of nonconformance. This power, however, is sometimes limited by the sellers right to cure the rejected nonconforming good. U.C.C. § 2-601. A seller is given the chance to cure when the time for performance has not run out, or when the seller "had reasonable grounds to believe [the goods] would be acceptable with or without a money allowance." U.C.C. § 2-508 (2).
If a buyer rightfully rejects a tender of goods in a contract such as this one, he is entitled to cancel the contract. U.C.C. § 2-711 (1). Once the contract is canceled, the buyer's obligation to pay the purchase price is discharged. U.C.C. § 2-106 (3).
USA does not dispute that both sets of coils it provided failed to conform to the performance specifications referenced in the contract purchase order. Mr Veleenturf, a licensed professional engineer at Am-Tech, testified for the defense. In his expert opinion, the original coils would not heat evenly across the coils entire length. As a result, the system could not meet the performance specification of producing 50 degree discharge air. Veleenturf testified that the replacement coils, which were installed exactly as USA instructed, functioned no better. These coils too would not consistently discharge 50 degree air.
USA blames the system design for the failure, claiming the incorrect placement of the trap door resulted in a system that could never work properly. While it is true that the functional Trane coils were installed into a system with a modified trap, the defendants presented evidence that the size of the coils precluded proper functioning. Accordingly, this court finds that the plaintiff breached the contract purchase order when it failed to provide coils which met the performance specifications. See
U.C.C. § 2-601. Thus, Hodess was excused from paying the purchase price. See U.C.C. § 2-106 (3); Aiello Const., Inc.v. Nationwide Tractor Trailer Training and Placement Corp.,413 A.2d 85, 88, 122 R.L 861, (R.I. 1980) (since the breach by defendant went to the essence of the contract, the plaintiffs were excused from further performance).
Moreover, with respect to USA's right to cure its breach, Hodess allowed USA the opportunity to do so. Hodess installed USA's replacement coils, carefully following USA's instructions and modifying the system at USA's suggestion. When the replacement coils failed, USA's attempts to cure the breach failed as well.
The doctrine of substantial performance, which is followed in both Pennsylvania and Rhode Island, alleviates the harshness of "the perfect tender rule." Under this doctrine, a party may recover under the contract notwithstanding minor defects or omissions if it would be unreasonable to condition recovery on strict performance. See National Chain Co. v. Campbell,487 A.2d 132, 135 (R.I. 1985); Sgarlat v. Griffith, 36 A.2d 330, 332 (Pa. 1944). The evaluation of a contractor's performance as substantial or unsubstantial is not simple, but rather is "a matter of degree," and should be made "relatively to all the other complex factors" in a case. Dimario v. Heeks, 351 A.2d 837, 839, 116 R.I. 44 (R.I. 1976) (citing 3A Corbin, Contracts § 704 at 318 (1960)). When a party to a contract has substantially performed, he can recover the contract price less the amount needed to remedy the defect. "This formula is inappropriate, however, in situations in which the contractor's performance is worthless and the work has to be redone completely." NationalChain Co., 487 A.2d at 135.
However, USA is not entitled to recover a portion of the purchase price under the doctrine of substantial performance. As it is the duty of the fact-finder to measure substantial performance, National Chain Co., 487 A.2d at 135, this court finds that USA failed even to substantially perform under the contract. The defendant testified as to the importance of maintaining a certain temperature within the "clean-room." Indeed, a failure with respect to this specification could threaten the entire operation. Clearly, the coils failure to meet the temperature specification does not constitute substantial performance under the contract. See Alliance Tractor ImplementCo. v. Lukens Tool Die Co., 233 N.W.2d 299, 301 (Neb. 1975) (the defendant-machine manufacturer did not substantially perform where the machine never operated more than five hours without malfunctioning, the machine was not in operating order when delivered, and the plaintiff made many efforts to make the machine operate as specified in the contract); Vincenzi v. Cerro,442 A.2d 1352, 1355 (Conn. 1982) (builder substantially performed where all that remained to be done was install two electric plates and build a rail for the front steps); Dickson v. Moran,344 So.2d 102, 104 (La. App. 1977) (where house was only 25-40% complete, builder did not substantially perform because the structure was not usable for its intended purpose). Thus, USA is not entitled to recover a portion of the contract price. CenturyMarine, Inc. v. United States, 153 F.3d 225 (5th Cir. 1998).
 Defendant's Counterclaim
The defendant counterclaims, arguing breach of the contract and seeking recovery of the replacement costs incurred due to the breach. Generally, "where a right of action for breach exists, compensatory damages will be given for the net amount of the losses caused and gains prevented by the defendant's breach, in excess of savings made possible." Restatement Contracts, § 329 at 505 (1932). The goal is to place the injured party in as good a position as he would have been if the contract had not been breached. 5 Corbin, Contracts § 992 at 5 (1951). Under Rhode Island or Pennsylvania law, a contracting party may cease performance and seek damages if the other party commits a breach that is material or goes to the essence of the contract[1] SeeGibson, 37 F.3d at 735; Riley. 98-34-A., Slip Op. at 5; Manciniv. Morrow, 458 A.2d 580, 586 (Pa. Super. 1983). Furthermore, the contract specifically provides for Hodess to recover damages in the event of USA's breach. Paragraph thirteen of the General Conditions states,
 "Vendor's breach of any of the terms, conditions or requirements of this Contract Purchase Order shall, upon Vendor's failure to cure the same within 48 hours of receipt of notice thereof, be good and sufficient ground for Contractor to cancel this Contract Purchase Order, and charge all resulting costs incurred to Vendor's account."
When a buyer justifiably revokes acceptance of goods, the measure of direct damages is the difference between the cost of cover and the contract price less any expenses saved as a result of the sellers breach. U.C.C. § 2-711(1)(b). To cover, a buyer must "in good faith and without reasonable delay" make a "reasonable purchase or contract to purchase . . . goods in substitution for those due from the seller." U.C.C. § 2-712 (1). Whether the buyer acted in good faith and in a reasonable manner is determined with reference to the conditions at the time and place the buyer attempted to cover. U.C.C. § 2-712 at comment 2. It is irrelevant that hindsight may later suggest a cheaper or more effective method. Id.; Erie Casein Co., Inc. v.Anric Corp., 577 N.E.2d 892, 895 (Ill. 1991). The burden of proof is on the seller of goods to prove that cover was not reasonably obtained. Red River Commodities, Inc. v. Eidsness,459 N.W.2d 811, 817 (ND 1990). The duty to mitigate damages may only be invoked as a defense when damages are sought by the injured buyer. S.J. Groves Sons Co. v. Warner Co., 576 F.2d 524, 529 (C.A. 3rd cir. 1978).
Having found USA breached the contract, this court also concludes that USA is liable for the resulting damages incurred by Hodess. See Gibson, 37 F.3d at 735, Mancini, 458 A.2d at 586. To replace the defective coils, Hodess incurred substantial expenses for engineering, supervision of and replacement of the coils. Hodess documented its expenditures with receipts and project expense reports, demonstrating a total reasonable replacement cost of $83,734.95. USA did not present any evidence which would tend to dispute the reasonableness of the cover costs. See Red River Commodities, Inc., 459 N.W.2d at 817 (seller did not meet his burden in proving that seller acted unreasonably in purchasing replacement goods at a price higher than the contract price). Thus, using the damages formula enunciated in U.C.C. § 2-711(1)(b), Hodess is entitled to the replacement costs less the contract price, or $50,578.95.
Accordingly, the plaintiff's demand for judgment is denied, and the defendant's counter-demand for judgment is granted in the amount of $50,578.95 plus interest and costs.
Counsel shall submit the appropriate judgment for entry.
[1] Factors the court considers in determining materiality include the injured party's deprivation of his benefit of the bargain; the feasibility of compensating the injured party for the loss of his benefit; the likelihood that the breaching party will cure his breach; and the extent to which the breaching party attempted to perform in good faith. See Restatement (Second)Contracts § 241 (1979).